UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BILLY J. MEIER,<br><br>                    Plaintiff,<br><br>        v.<br><br>CORRECT CARE SOLUTIONS et. al.,<br><br>                    Defendants. | Case No. C17-5248-BHS-TLF<br><br>REPORT AND RECOMMENDATION<br><br>Noted for July 13, 2018 |

This matter is before the Court on a Motion for Summary Judgement filed by defendant Clark County Sheriff's Office (Custody Branch) ("Sheriff's Office")).[1] Plaintiff has brought suit under 42 U.S.C. § 1983 alleging that, while in custody at the Clark County Jail, he was provided with inadequate medical care for his hernia and that inmates, including himself, were not provided a "safe way" to access the top bunk." Dkt. 7, at 3. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR 4(a)(4). For the reasons set forth below, the undersigned recommends the Court grant defendant's Motion and dismiss plaintiff's amended complaint, as against the moving defendant, with prejudice.

---

[1] Defendants Correct Care Solutions and John Doe, physician's assistant (the "Medical Defendants"), are represented by separate counsel and have neither moved for summary judgment nor joined the instant motion. Accordingly, this Report and Recommendation addresses only the claims against the Sheriff's Office.

REPORT AND RECOMMENDATION - 1

## BACKGROUND

Plaintiff is incarcerated at the Washington Corrections Center ("WCC"). He seeks $500,000 in damages and injunctive relief relating to his medical care and the conditions of his confinement at the Clark County Jail. Dkt. 7, at 4. Plaintiff sues the Sheriff's Office and the Medical Defendants (Correct Care Solutions and a physician's assistant at Clark County Jail identified as "John Doe."). *Id.*, at 1. Plaintiff alleges that in January 2017, he signed up for sick call for treatment of a hernia which he believes he incurred because he was forced to climb up and down from a top bunk without a ladder. *Id.*, at 3.

Plaintiff alleges that, at sick call, defendant "John Doe," the physician's assistant, did not even examine him but informed him he had an "inguinal hernia" and that he would "be fine" but to inform medical staff if the hernia was getting worse. *Id.* Plaintiff alleges that after "a while" he believed his hernia was getting worse and signed up for sick call again in the middle of February 2017. *Id.* He indicates he was seen by a different nurse, not named as a defendant, and that she prescribed him ibuprofen for his pain but that this "did not really help." *Id.*

Plaintiff contends that "Correct Care Solutions is the medical provider and it is their responsibility that patients get the proper medical attention" and that they failed to do so with respect to his hernia. *Id.* Plaintiff further alleges that the Sheriff's Office failed to "ensure inmates a safe manner in order to access the top bunk." *Id.*

## DISCUSSION

Defendant Sheriff's Office argues that plaintiff's claims should be dismissed because it is not a proper defendant amenable to suit, plaintiff has failed to exhaust his available administrative remedies, plaintiff has failed to allege any constitutional violation on the part of the defendant, and defendant is entitled to qualified immunity. Dkt. 15. Plaintiff submitted no response or opposition to defendant's motion. For the reasons set forth below, the undersigned

1  recommends that defendant's Motion be granted and the amended complaint be dismissed with
2  prejudice as against the Sheriff's Office.

3  **A.     Summary Judgment Standard**

4  Summary judgment shall be rendered if the pleadings, exhibits, and affidavits show that
5  there is no genuine issue as to any material fact and that the moving party is entitled to judgment
6  as a matter of law. Federal Rule of Civil Procedure (FRCP) 56(c). In deciding whether summary
7  judgment should be granted, the Court "must view the evidence in the light most favorable to the
8  nonmoving party," and draw all inferences "in the light most favorable" to that party. *T.W. Elec.
9  Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). When a
10 summary judgment motion is supported as provided in FRCP 56, an adverse party may not rest
11 upon the mere allegations or denials of his pleading, but his or her response, by affidavits or as
12 otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for
13 trial. FRCP 56(e)(2).

14 If the nonmoving party does not respond, summary judgment, if appropriate, shall be
15 rendered against that party. *Id.* The moving party must demonstrate the absence of a genuine
16 issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Mere
17 disagreement or the bald assertion that a genuine issue of material fact exists does not preclude
18 summary judgment. *California Architectural Building Prods., Inc. v. Franciscan Ceramics, Inc.*,
19 818 F.2d 1466, 1468 (9th Cir. 1987). A "material" fact is one which is "relevant to an element of
20 a claim or defense and whose existence might affect the outcome of the suit," and the materiality
21 of which is "determined by the substantive law governing the claim." *T.W. Electrical Serv.*, 809
22 F.2d at 630.

1    If there are "[d]isputes over irrelevant or unnecessary facts," those disputes "will not
2 preclude a grant of summary judgment." inferences "in the light most favorable" to that party.
3 *T.W. Elec. Serv., Inc.* at 630. Rather, the nonmoving party "must produce at least some
4 'significant probative evidence tending to support the complaint.'" *Id.* (quoting *Anderson*, 477
5 U.S. at 290). "No longer can it be argued that any disagreement about a material issue of fact
6 precludes the use of summary judgment." *California Architectural Building Prods., Inc.*, 818
7 F.2d at 1468. In other words, the purpose of summary judgment "is not to replace conclusory
8 allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l*
9 *Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

10 **B.    Section 1983 Standard**

11    In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that
12 he suffered a violation of rights protected by the Constitution or created by federal statute, and
13 (ii) that the violation was proximately caused by a person acting under color of state law. *See*
14 *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983
15 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in
16 another's affirmative act, or omitted to perform an act which he was legally required to do that
17 caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981)
18 (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

19    A defendant cannot be held liable under § 1983 solely on the basis of the individual's
20 supervisory responsibility or position. *Monell v. Department of Social Servs., of City of New*
21 *York*, 436 U.S. 658, 691-694 (1978). Rather, a plaintiff must allege that a defendant's own
22 conduct violated the plaintiff's civil rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385-90
23 (1989).

24
25

A local government unit or municipality can be sued as a "person" under § 1983. *Monell*, 436 U.S. at 691. However, a municipality cannot be held liable under § 1983 solely because it employs a tortfeasor. *Id*. A plaintiff seeking to impose liability on a municipality under § 1983 must identify a municipal "policy" or "custom" that caused his or her injury. *Bryan County Commissioners v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell* 436 U.S. at 694).

In *Bryan County Commissioners*, the Supreme Court explained that

> it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bryan County Commissioners*, 520 U.S. at 404.

C.  **Improper Defendant**

Defendant Sheriff's Office moves for summary judgment on the ground that, as a division of Clark County, it is not a proper defendant amendable to suit. Dkt. 15. Section 1983 applies to the actions of "persons" acting under color of state law. In order to bring an appropriate claim challenging the actions, policies or customs of a local governmental unit, a plaintiff must name the county or city itself as a party to the action, and not the particular municipal department or facility where the alleged violation occurred. *See Bradford v. City of Seattle*, 557 F.Supp.2d 1189, 1207 (W.D. Wash. 2008) (Seattle Police Department is not a legal entity capable of being sued under § 1983).

Defendant Sheriff's Office is an entity of Clark County and, as such, is not a proper defendant. Plaintiff has not opposed defendant's Motion or otherwise raised a genuine issue of material fact. Accordingly, defendant's Motion should be granted and the matter dismissed with prejudice as against defendant Sheriff's Office.

REPORT AND RECOMMENDATION - 5

### D.     Inadequate Medical Care

Even if the Court were to construe plaintiff's amended complaint as naming Clark County (as opposed to an entity of Clark County) as a defendant, with respect to plaintiff's allegation of inadequate medical care, plaintiff fails to identify in his amended complaint, or in opposition to defendant's motion, any policy or custom of Clark County that caused an alleged constitutional injury. Here, construing plaintiff's complaint liberally, he alleges that "John Doe", a physician's assistant, violated his constitutional rights by failing to properly treat his hernia.

Defendant Sheriff's Office presents evidence in the form of a declaration from Richard J. Bishop, its Chief Corrections Deputy, that it does not employ any medical or nursing staff but instead contracts with an outside medical provider to provide medical care to the inmates in Clark County Jail. Dkt. 16, at 2. Deputy Bishop states that, during the period in question (2017), the Sheriff's Office contracted with Correct Care Solutions to provide medical services to individuals incarcerated at Clark County Jail. *Id.* Plaintiff does not appear to dispute this, stating in his amended complaint that "Correct Care Solutions is the medical provider and it is their responsibility that patients get the proper medical attention to ensure the safety of patients['] health." Dkt. 7, at 3.

As noted above, a plaintiff seeking to impose liability on a municipality under § 1983 cannot do so merely because the municipality employs a tortfeasor; rather, plaintiff must identify a municipal "policy" or "custom" that caused his or her injury. *Bryan County Commissioners*, 520 U.S. at 403 (citing *Monell*, 436 U.S. at 694). Although plaintiff alleges that Clark County contracted with Correct Care Solutions for the provision of medical care, plaintiff fails to identify in his amended complaint, or in opposition to defendant's motion, any policy or custom of Clark County that caused the alleged unconstitutional failure of Correct Care Solutions, or the

"John Doe" physician's assistant, to provide adequate medical care for plaintiff's hernia. In sum, with respect to plaintiff's claim of inadequate medical care, the Court cannot infer from the facts alleged by plaintiff, nor can it conclude from the evidence in the record, that Clark County, through its deliberate conduct, was the moving force behind any alleged deprivation of plaintiff's constitutional rights. Accordingly, defendant is entitled to summary judgment with respect to this claim on this basis as well.

E.     **Ladder-less Bunk/Conditions of Confinement**

Plaintiff also alleges that his hernia was caused by "strenuously having to climb up to the top bunk as well as jump off the top bunk, due to the fact that the only way is to jump up and down." Dkt. 7, at 3. Plaintiff argues that the Sheriff's Office "should ensure inmates a safe manner in order to access the top bunk." *Id.* Even if the Court were to construe plaintiff's complaint here as naming Clark County (instead of the Sheriff's Office) as a defendant, and even assuming plaintiff's allegations are sufficient to allege a custom or policy with respect to bunk access that implicated a constitutional right, summary judgment and dismissal of this claim would still be warranted due to plaintiff's failure to exhaust his administrative remedies.

Section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a) requires *complete* exhaustion through any available process. *See Porter v. Nussle* 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 735 (2001). Section 1997e(a) also requires *proper* exhaustion. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper" exhaustion means full compliance by a prisoner with all procedural requirements of an institution's grievance process. *See id.* at 93-95.

Exhaustion must *precede* the filing of the complaint and compliance with the statute is not achieved by satisfying the exhaustion requirement during the course of an action. *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002).

In support of its Motion, defendant relies upon the declaration of Deputy Bishop. Deputy Bishop indicates he is aware of how the inmate grievance system operates. Dkt. 16, at 1. Deputy Bishop describes the timeline for medical grievances as well as for non-medical grievances[2] and states that plaintiff filed no grievances related to either alleged inadequate medical care or with respect to the conditions of confinement, i.e., the bunks, during the period in question (January 1, 2017 through February 24, 2017). *Id.*, at 2-4. Deputy Bishop also outlines the procedure for how inmates can request and receive bed assignment changes. *Id.* He indicates that,

> [a]n inmate who needs a bed change, including from a top bunk to a lower bunk, needs to submit the request to the corrections deputy assigned to the unit where the inmate resides. If an inmate requests a bed change and has a medical reason for making such a request, the deputy is to provide the inmate with a bunk that addresses the inmate's medical needs. If the change does not occur or the inmate feels the change does not meet their medical needs, they are to use the grievance process.

*Id.*, at 4. Deputy Bishop states that plaintiff did not request a bed change at any point during the period in question (January 1, 2017 through February 24, 2017). *Id.*

Plaintiff offers no evidence disputing Deputy Bishop's Declaration. He has submitted no materials in opposition to summary judgment. In addition, his amended complaint admits on its

---

[2] Specifically, Deputy Bishop states that "The timeline for a medical grievance is: 1. Complete and submit a 'Medical Inmate Grievance Form' within seven (7) days after service; and 2. After receiving the answer/response, the inmate has forty eight (48) hours to file his medical grievance to the next level. In order for an inmate's administrative remedies to be exhausted, he or she must file a medical grievance to the fourth level and all other grievances to the third level." Dkt. 16, at 3. With respect to non-medical grievances, Deputy Bishop states that "1. An inmate has seven (7) days from the time of the event to submit an 'Inmate Grievance Form'; 2. The inmate will receive a written response from the appropriate sergeant within five (5) business days; 3. If the inmate is not satisfied with the response, he [has] forty eight (48) hours from receiving the answer to file the grievance to the next level. The inmate must list a reason why the response didn't resolve the grievance[;] 4. Each administrative level, Commander and the Chief Jail Administrator has ten (10) business days to respond." *Id.*

REPORT AND RECOMMENDATION - 8

1  face that he did not file any grievances. Dkt 7, p. 2. Plaintiff indicates in his amended complaint
2  that he was transferred from Clark County Jail to Department of Corrections (DOC) custody on
3  February 24, 2017. Dkt. 7, p. 2. However, as noted above, "proper" exhaustion means full
4  compliance by a prisoner with all procedural requirements of an institution's grievance process
5  and must precede the filing of the complaint. *Woodford,* 548 U.S. at 93; *McKinney*, 311 F.3d at
6  1199.

7  In addition, the exhaustion requirement is not rendered inapplicable due only to a
8  prisoner's transfer to another facility. *See, e.g. May v. Snaza*, No. C14-5695 RBL-KLS, 2014
9  WL 5605061 (W.D. Wash. 2014); *Medina Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir.
10 2002) ("The fact that [plaintiff] happened to be a prisoner in various locations, and under the
11 custody of different officials, does not affect his obligation to exhaust his administrative
12 remedies before filing suit.").

13 Here, plaintiff's amended complaint indicates he incurred his hernia, allegedly due to the
14 condition of the bunks, in January 2017; he also alleges that he signed up for sick call in January
15 2017 and was seen by the "John Doe" physician's assistant. Dkt. 7, at 3. Pursuant to the
16 grievance procedure outlined by Deputy Bishop, in order to properly exhaust his administrative
17 remedies, plaintiff was required to file his grievances (either medical or non-medical) within
18 seven days of the event giving rise to the grievance. Dkt. 16, at 3.

19 Plaintiff indicates the events giving rise to his claims occurred in January 2017, but that
20 he was not transferred until February 24, 2017, well beyond the seven days in which plaintiff
21 was required to file his grievances. Plaintiff does not contend that he made any effort to file
22 grievances either within the seven days or any time thereafter. This Court therefore also
23 concludes that plaintiff failed to properly exhaust his claims. Thus, in the event the District Court

does not find dismissal with prejudice appropriate on the other grounds discussed above, the Court recommends that plaintiff's claims be dismissed as against defendant Sheriff's Office without prejudice due to plaintiff's failure to exhaust his administrative remedies.[3]

## CONCLUSION

Based on the foregoing, this Court recommends that defendant's Motion for Summary Judgment be granted, and that plaintiff's amended complaint and this action be dismissed with prejudice as against defendant Sheriff's Office. In the event the District Court does not find dismissal with prejudice appropriate on the other grounds discussed above, the Court recommends that plaintiff's claims be dismissed as against defendant Sheriff's Office without prejudice due to plaintiff's failure to exhaust his administrative remedies. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **July 9, 2018**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **July 13, 2018.**

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

---

[3] Because this Court concludes that the issues discussed above are dispositive, defendant's remaining arguments have not been addressed.

1   Dated this 25th day of June, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11